**JEMISON et al. v. HOWELL et al.**

6 Div. 730.

Supreme Court of Alabama.
May 30, 1935.

Cabaniss & Johnston and K. E. Cooper, all of Birmingham, for appellant.

C. E. Mitchell, of Hamilton, for appellees.

GARDNER, Justice.

B. F. Howell and wife executed to Jemison & Co., Inc., a mortgage upon their homestead to secure a loan of $1,000. The loan ran for a period of ten years, the principal note becoming due April 1, 1933, the mortgage and notes bearing date of April 2, 1923. There were ten interest notes, eight of which have been paid.

The general acknowledgment of the mortgagor and his wife bears date of April 7, 1923, and in the separate acknowledgment of the wife before the same notary public is the certification that she appeared before him "on the 7th day of April 1923."

On October 12, 1931, the principal note for $1,000 due April 1, 1933, was duly transferred by Jemison & Co., Inc., to Eugenia R. Jemison (omitting reference to any previous transfer as here immaterial), with also a transfer of the mortgage given for its security. The consideration therefor, from the undisputed proof, was $1,000 and accrued interest paid by the transferee.

Defaulting in further payment, Howell filed the statutory bill to quiet title. All defendants, save Eugenia R. Jemison, disclaimed any interest in the property. Defendant Jemison asserted her title thereto pursuant to the above-noted transfer and purchase, and sought by cross-bill a foreclosure of the mortgage. Howell, the mortgagor, interposes the defense, first, that the mortgage was executed on Sunday, and is therefore void, and, second, that the real estate constituted his homestead, and the separate acknowledgment of the wife was likewise on Sunday, and of consequence invalidated the mortgage. The note and mortgage together with the acknowledgment each bears date of a secular day, and appear entirely regular upon their face.

The burden of proof rested upon the mortgagor. 60 Corpus Juris 1127; Fies & Sons v. Lowery, 226 Ala. 329, 147 So. 136.

It may be conceded that the preponderance of the proof is to the effect the note and mortgage were signed by the mortgagor and his wife on Sunday, and it seems to have been assumed by the mortgagor that this sufficed to establish the transaction as violative of our Sunday statute. Section 6821, Code 1923. But it has long been settled by our decisions, in harmony with the authorities generally (60 Corpus Juris 1099), that the validity of a written contract signed on Sunday is not impaired if it be not delivered on that day.

The early case of Flanagan v. Meyer, 41 Ala. 132, concerned a note signed on Sunday, and the holding was that the writing and signing of a note on Sunday is not the execu-

tion of it on that day, unless it be delivered the same day to the payee; delivery being essential to make it operative as a contract. And to like effect was Woodstock Iron Co. v. Richardson, 94 Ala. 629, 10 So. 144, quoted with approval in Cross v. Bank of Ensley, 203 Ala. 561, 84 So. 267, 269, where was the observation that: "If delivered on a subsequent day, not Sunday, it takes effect as a valid instrument from the day of delivery." See, also, Burns & Co. v. Moore, 76 Ala. 339, 52 Am. Rep. 332; Williams v. Armstrong, 130 Ala. 389, 30 So. 553; O'Neal v. Turner (Ala. Sup.) 158 So. 801.

■ Upon the question of delivery of the note and mortgage, the proof is entirely silent. It does appear without dispute there was no pretense of closing the transaction on that day, merely signing the note and mortgage, but that the loan was in fact closed some time subsequently on May 15, 1923, when the check was indorsed and delivered. If any presumptions are to be indulged, it would seem more in keeping with business practice that the delivery of these instruments not be made until the money was likewise ready to be paid over to the borrower. But there is no occasion for indulgence of any presumption. The burden of proof was upon the mortgagor, and in the absence of proof as to delivery there is nothing to show a contract made in violation of the statute.

■ But other considerations lead to a like result, even should it be conceded that there was actual execution of the contract on Sunday. Cross-complainant is shown to be a purchaser for value and before maturity of the principal note, which was secured by the mortgage, and which is impressed with the same character and quality of right that may be asserted in an action on the note. Commercial Credit Co. v. Parks, 215 Ala. 648, 112 So. 237; Fortson v. Bishop, 204 Ala. 524, 86 So. 399; Birmingham Trust Co. v. Howell, 202 Ala. 39, 79 So. 377.

■ The mortgagor signed this negotiable note and the mortgage purporting to be made on and bearing date of a secular day, and we find ourselves in accord with the Court of Appeals in Moseley v. Selma National Bank, 3 Ala. App. 614, 57 So. 91, 93, to the effect that under these circumstances he is estopped, as against an innocent holder, from showing that it was executed and delivered on Sunday. The court there observed: "The great weight of authorities seem to hold that one who gives to an instrument a legal date, thereby authorizing innocent parties to deal with it as such, cannot be heard to deny the legality of date in a suit against him by an innocent holder, who came into possession as a bona fide purchaser for value, without notice. It would seem that this rule, as applicable to commercial paper, is essentially just, and based on sound reason." The Moseley Case, supra, is approvingly quoted by the Mississippi court in Currie-McGraw Co. v. Friedman, 135 Miss. 701, 100 So. 273, where many authorities are cited. And this is in harmony with our statutes. Sections 9039 and 9041, Code 1923.

The first stated defense therefore fails, viewed from either aspect.

Likewise, we think there is more than one answer to the second stated defense, that the mortgage was void because of the invalidity of the wife's separate acknowledgment, essential for conveyance of the homestead. Hayes v. Southern Home Building & Loan Ass'n, 124 Ala. 663, 26 So. 527, 82 Am. St. Rep. 216.

■ It seems to be assumed in the first place by counsel for the mortgagor that an acknowledgment, which is but a formal admission before an officer by one who has executed an instrument that such was his act and deed (1 Corpus Juris 745), is of no effect if taken on Sunday; but we are cited to no statute to that effect. It bears no resemblance to a contract, and can in no manner be classed with the prohibitions of section 6821, nor those of section 5539, Code 1923. True, it is the generally recognized rule that, at common law, Sunday is dies non juridicus, that, therefore, no judicial act or proceeding could be done or had on that day (60 Corpus Juris 1135), though acts purely ministerial may be performed on that day. Matthews v. Ansley, 31 Ala. 20. And while it is also true that under our decisions the taking of an acknowledgment is a judicial, as distinguished from a ministerial, act (Fies & Sons v. Lowery, 226 Ala. 329, 147 So. 136), yet, in Reid v. State, 53 Ala. 402, 25 Am. Rep. 627, it was observed that "Sunday prohibitions of the common law reached only the courts. Its injunctions were all embraced in the maxim: 'Dies Dominicus non est juridicus.' The Lord's day is not a court day."

The question is also discussed in Comer v. Jackson, 50 Ala. 384, where it was said: "The Sabbath is sacred for the preservation of the peace and good order of the State; but it is only sacred for sacred purposes. It is very evident that it is not the policy of the law of this State to make the Sabbath an opportunity of escape for an absconding debtor." But, as the common-law Sunday prohibitions

reached only the courts, it is evident that taking acknowledgments could by no reasonable logic come within such classification, and, indeed, acknowledgments by persons, other than married women for the purpose of authenticating conveyances for record, were unknown to the common law, and seem to have first made their appearance in England after the enactment in 1536 of the Statute of Enrollments. 1 Corpus Juris 746.

It is evident, therefore, that for the matter of prohibition against acknowledgments on Sunday, the statutes of the various states must be looked to, and this seems to be the view entertained by the courts considering the question. The New Jersey Sunday statute is very broad and comprehensive, and was held to include prohibition of acknowledgments on that day in Bowen v. Pursel, 100 N. J. Eq. 319, 134 A. 665.

On the contrary, the Tennessee court found the statute of that state not so comprehensive, and more restrictive, and the holding was that an acknowledgment on that day was valid. Lucas v. Larkin, 85 Tenn. 355, 3 S. W. 647; 60 Corpus Juris 1110.

As previously noted, we have no statute which could in any manner be construed as embracing such a prohibition, and, in the absence of such a statute, we find no authority for striking down an acknowledgment so taken. Moreover, upon the broad ground of public policy, it is the settled rule in this state that, given "the presence of the officer for the purpose stated, the presence of the instruments themselves, the presence of the grantors for said purposes, and the signing of the papers then and there by them—the notary's certificates of the acknowledgment of the husband and the separate acknowledgment of the wife are not open to impeachment by parol evidence, no fraud or duress having been shown." American Freehold Land Mortgage Co. v. Thornton, 108 Ala. 258, 19 So. 529, 530, 54 Am. St. Rep. 148; Qualls v. Qualls, 196 Ala. 524, 72 So. 76; Moore v. Bragg, 212 Ala. 481, 103 So. 452, 454. And in Grider v. American Freehold Land Mortgage Co., 99 Ala. 281, 12 So. 775, 42 Am. St. Rep. 58, it was said that this established rule may now be regarded as a rule of property which it would be unwise and unsafe to disturb.

And in Moore v. Bragg, supra, the court said: "But the rule above stated is founded upon public policy, aims at the security of titles, has been often considered and firmly established in this state, and is in harmony with the current of authority. * * * Jurisdiction having been acquired, parol evidence cannot impeach any of the recitals of fact which the law requires to appear in the certificate, no fraud being alleged. Any other rule would open the door to all the evils at which the established rule is aimed, and render the official certificate of the officer of little practical value."

In the instant case there is no question as to the competency of the notary public, nor of his jurisdiction of the person and subject-matter. No question of fraud or duress is involved. The acknowledgment was in code form for homesteads (section 6845, Code 1923), and recites that the wife of the grantor appeared before the notary on a given date, which was a secular day. It is now sought to impeach the certificate by parol evidence, that in fact the acknowledgment was on Sunday, and not on the date therein stated. We think such an effort comes within the letter and spirit of the well-established rule in this jurisdiction, which we have just discussed, and is subject to the same condemnation as the effort considered in Moore v. Bragg, supra, to show that the wife was not in fact examined separate and apart from the husband, and other examples noted in our decisions.

We are therefore persuaded that upon either view of the question, the acknowledgment is to be upheld, and the mortgage declared valid. This conclusion renders unnecessary a consideration of the further insistence that cross-complainant as an innocent purchaser would be protected in any event. Upon that question we need express no opinion.

Our conclusion is that the mortgage held by cross-complainant Eugenia R. Jemison is valid and binding, and that she was due to have her prayer for foreclosure granted. The decree in so far as it denies original complainant relief will be affirmed, but, in so far as it dismisses the cross-bill, will be reversed and a decree here rendered granting cross-complainant relief she seeks by way of foreclosure of her mortgage. And to the end that the amount due be ascertained and further orders entered as for proper proceedings in the foreclosure of said mortgage, the cause will be remanded to the trial court.

Affirmed in part, and in part reversed, rendered, and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.